513 So.2d 160 (1987)
Donald PIERCE and Michele Pierce, His Wife, Appellants,
v.
AALL INSURANCE INCORPORATED, a Florida Corporation, Appellee.
No. 86-828.
District Court of Appeal of Florida, Fifth District.
August 13, 1987.
Rehearing Denied September 28, 1987.
David D. Guiley of Maher, Overchuck and Langa, Orlando, for appellants.
Linda F. Wells of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Orlando, for appellee.
DAUKSCH, Judge.
This is an appeal from a summary judgment in a negligence case. The issue regards the statutes of limitations and whether the two-year professional malpractice statute applies to this lawsuit.
Appellant alleges his insurance agent improperly, negligently, advised him about *161 his options regarding insuring his automobile. He says that as a result of this negligence, or misconduct, he did not have uninsured motorist coverage and suffered financial loss.
If one alleges a cause of action sounding in professional malpractice then the statute of limitations requires the suit to be filed within two years of the discovery of malpractice. 95.11(4)(a), Florida Statutes (1983). If the cause of action is for other negligence then the statute of limitations is four years. 95.11(3)(a), Florida Statutes (1983).
Appellants argue that an insurance agent is not a "professional" and thus the professional malpractice statute should not apply to bar the suit. They say the breach of the duty to advise them about uninsured motorist coverage involves an ordinary negligence cause of action because "[t]raditionally, actions for `malpractice' in American jurisprudence have been held applicable to predominantly doctors and lawyers." Appellants are correct that traditionally only a few persons could call themselves professionals. Doctors, lawyers, teachers, ministers, engineers, architects and a few others come to mind. But "tradition" has been overcome in modern times, with lawyers hawking their wares in public advertisements, doctors forming vertical corporations offering all sorts of health-related services and supplies, and architects and engineers becoming builders and landlords, too. The image of these "professionals" has changed, as well as their practices. Others have come under the umbrella of professional, one of whom, in our opinion, is the insurance agent who acts as advisor, law-interpreter, and provider of the "best package" for his clients. The good hands of Allstate and the Travelers' umbrella, along with others, tout their expertise exactly like those doctors, lawyers and dentists who assault us on television about their worth.
Rather than look to the title of the person being sued it is better now to look to the act done which injures. If the act is one which involves giving advice, using superior knowledge and training of a technical nature, or imparting instruction and recommendations in the learned arts then the act is one of a professional. One person, a professional, can do two different acts; one of a professional nature, the other not. For example, a doctor while treating a patient for the gout can tell him about a hot stock-market tip. If that tip does not provide profit it can hardly be said that the doctor committed professional malpractice, any more than a broker's attempt to treat gout can be deemed such malpractice. There are shadings between various acts, and persons performing them.
Here the act was failing to give proper advice by one of superior training, knowledge and experience. That is an act of one who is within Webster's definition of profession, "a calling requiring specialized knowledge and often long and intensive academic preparation." Webster's New Collegiate Dictionary (1979). The plaintiffs/appellants chose their cause of action and defined the tort as one of failing to give proper advice. That sounds just like professional malpractice. It is professional malpractice. If it had been alleged appellee had negligently failed to deliver a particular insurance policy after having been instructed to do so, perhaps another statute would apply. We think this case is similar to Cristich v. Allen Engineering, Inc., 458 So.2d 76 (Fla. 5th DCA 1984) where this court held that a land surveyor is a professional within the statute and pointed out that the particular acts complained of there involve more than merely negligently injuring someone. They involved the unusual acts of properly carrying out the locating and defining of land boundaries. To do such involves knowledge and skills greater than is common and requires knowledge of mathematics, geography and other physical sciences.
Because the acts claimed to be tortious involve alleged professional negligence or misconduct, the two-year statute applies and the trial judge correctly so ruled.
We certify to the Supreme Court of Florida the following question as one of great public importance:

*162 FOR THE PURPOSES OF THE PROFESSIONAL MALPRACTICE STATUTE IS AN INSURANCE AGENT A PROFESSIONAL?
AFFIRMED.
COWART, J., concurs.
SHARP, J., dissents with opinion.
SHARP, Judge, dissenting.
I respectfully dissent because based on this record, the two year professional malpractice statute of limitations is inapplicable and therefore does not bar the Pierces' cause of action against AALL Insurance Incorporated as a matter of law.
Ironically, the consequence of being categorized as a "professional," rather than imposing a higher duty or standard of care on the provider of the service, excuses AALL from any liability in this lawsuit. Normally, a "professional" is exposed to additional ethical and moral obligations. DeVaney v. Rumsch, 228 So.2d 904 (Fla. 1969). The term "professional malpractice" is not defined in section 95.11(4)(a), Florida Statutes (1985), and has received a narrow construction by the courts. Therefore, I would follow the approach suggested by this court in Cristich v. Allen Engineering, Inc., 458 So.2d 76 (Fla. 5th DCA 1984) and deny the applicability of the two-year statute to insurance agents or agencies, as a general rule.
In Cristich we held that a land surveyor regulated and licensed by the Department of Professional Regulation, Chapter 472, committed professional malpractice when he negligently prepared a survey of a condominium project, knowing it would be relied upon by owners and developers. In that case, we emphasized "that land surveying requires a great deal of specialized knowledge. This knowledge is generally derived from extensive academic preparation ..." Cristich, 458 So.2d at 79. We noted that in order to sit for an examination to obtain a license, a person must have graduated from a university surveying program, and have worked for two years in land surveying under a professional land surveyor. An alternative was eight years of experience working for a land surveyor. We also took note that land surveying required knowledge and application of various disciplines: mathematics, geography, and the physical sciences.
In contrast, there are no such comparable academic requirements to obtain a license to sell liability insurance and no required knowledge of other disciplines. One can qualify with a four-year college degree with "major course work" in insurance or fifteen semester hours of college credit in property and casualty insurance, or a correspondence course equating to six semester hours in all lines of insurance except life and annuities.[1] An alternative is only one year of experience with no academic preparation.[2]
Simply being regulated and licensed by the Department of Professional Regulation does not make a particular calling or occupation a "profession." See DeVaney v. Rumsch. As our sister court pointed out in Toledo Park Homes v. Grant, 447 So.2d 343 (Fla. 4th DCA 1984), that would make numerous endeavors requiring licensing and supervision by the state to protect the safety and welfare of the public "professionals," which I do not believe was the intent of the Legislature.[3] The distinction is not having a specialized area of knowledge and having persons or clients rely upon the service-provider's judgment, guidance or skill. Many occupations such as auto mechanics or plumbers qualify in those regards. The traditional difference has always been that a "profession" requires its practitioners to have "special, usually advanced, education and skill" (Blacks Law Dictionary 1089 (5th ed. 1979)) or "specialized knowledge and often *163 long and intensive academic preparation." (Webster's New Collegiate Dictionary 911 (1981)).
In order to make an ordinary insurance agent or agency into a "professional," the record must establish more than the fact that the minimal licensing requirements were met and the normal purchase of liability insurance from an insurance salesperson took place. See 16A Appleman, Insurance Law and Practice § 8836 at 64 (1981).
In Seascape of Hickory Point Condominium Association, Inc. v. Associated Insurance Services, Inc., 443 So.2d 488 (Fla. 2d DCA 1984), the court ruled that the complaint stated a cause of action against an insurance agency for failure to correctly advise a client about the availability of seawall insurance, after the client requested such insurance. The court analogized this default to that of an attorney advising a client erroneously on a point of law. However, the court emphasized that the insurance agency held itself out as "providing professional insurance planning to all Lee County"; and that the plaintiff had dealt with and relied upon the insurance agency for all of its insurance over a number of years. Seascape, 443 So.2d at 489.
No comparable showing was made in this case. From this record we do not know what kinds of insurance AALL was licensed to sell; nor whether it held itself out as having professional knowledge. Further, we do not know whether Dorothy M. Boor, the selling agent of AALL in this case, had any kind of long-term relationship with the plaintiff, or any exceptional knowledge or experience.
Finally, even if giving erroneous advice to an insurance client about the availability of a type of insurance coverage constitutes professional malpractice in a proper case, see Hotel Properties Ltd. v. Savage-Manfre & Associates, Inc., 493 So.2d 544 (Fla. 3rd DCA 1986), I do not think the default alleged in the Pierces' complaint in this case falls into that category. Pierce alleged that AALL failed to inform him of the various options available for uninsured or underinsured motorist coverage. This is not a duty imposed by the acceptable or standard practice of insurance agents. Rather, it is a duty imposed on insurance companies by state law.[4] Hence, it is imposed on AALL as the agent for the insurance company.
In addition, Pierce's complaint alleged (and has not been challenged by any summary judgment affidavits or depositions) that AALL processed and completed Pierce's insurance application "in a manner and form unauthorized" by him. The claimed malfeasance was either causing the policy to be issued without uninsured motorist coverage or forging Pierce's signature on the waiver before sending it in. Both of these acts do not constitute "professional malpractice." The former is a violation of state law and the latter is fraud or a forgery. A doctor who fails to comply with a statutorily mandated duty to warn a patient of a certain danger in taking a drug, can be held liable for breach of that statutory duty, above and beyond any malpractice default. Similarly, an attorney who forges his client's signature to an affidavit required to be filed with an agency or a court risks far more than liability for malpractice. I would reverse.
NOTES
[1] Fla. Admin. Code Rule 4-52.10 (1983).
[2] § 626.732, Fla. Stat. (19830.
[3] For example, the Department regulates and licenses funeral directors and embalmers (Ch. 470); Barbers (Ch. 476); Cosmetologists (Ch. 477); masseuses (Ch. 480); pest controllers (Ch. 487); private detectives (Ch. 493); solicitors of charitable funds (Ch. 496); real estate brokers and salesmen (Ch. 475); and numerous other occupations.
[4] § 627.727, Fla. Stat. (1981).